IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE MIGUEL WILSON, ) | |
| Petitioner, ) | Civil Action No. 07-266 Erie |
| ) | |
| v. ) | |
| ) | District Judge Sean J. McLaughlin |
| JOHN A. PALAKOVICH, et al., ) | Magistrate Judge Susan Paradise Baxter |
| Respondents. ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that the Amended Petition for Writ of Habeas Corpus [Document No. 18] be denied and that a certificate of appealability be denied.

**II.   REPORT**

**A.   Relevant Background[1]**

On December 15, 2002, Hattie Jones was beaten to death in her apartment located at 1613 German Street, Erie, Pennsylvania. That evening, Petitioner went to the police station to make a statement because he knew that he was a suspect in Jones's murder. The police interviewed him for approximately four hours. He gave several inconsistent and inculpatory statements and he was arrested the next day. He was charged with the offenses of criminal homicide, robbery, aggravated assault, theft by unlawful taking, and receiving stolen property. The trial court appointed Daniel J. Brabender, Jr., Esq., to represent him.

Following the denial of a motion to suppress his statement to the police, Petitioner proceeded to trial against the advice of Brabender, who counseled him to enter into a plea agreement with the Commonwealth. At the trial, the Commonwealth introduced compelling

---

[1] Respondents have submitted the original state court record ("SCR") and all relevant transcripts. The SCR is indexed and consists of 56 documents. It shall be cited to as "SCR No. __ ."

1

evidence of Petitioner's guilt.  In addition to his inculpatory statements,[2] it introduced testimony from witnesses who placed him alone with Jones in her apartment at the time she was killed, as well as DNA and fingerprint evidence linking him to the murder.  (See SCR No. 41, Commonwealth v. Wilson, No. 451 A&B 2003, slip op. at 2-7 (C.P. Erie, Mar. 30, 2004)).

On October 10, 2003, the jury found Petitioner guilty of second-degree murder (felony murder);[3] robbery; aggravated assault; and, theft by unlawful taking.  On November 25, 2003, the court sentenced him to the mandatory term of life imprisonment on the second-degree murder conviction, plus a concurrent term of 60-120 months.

Joseph P. Burt, Esq., was appointed to represented Petitioner in his direct appeal.  In that appeal, Petitioner claimed that the trial court erred in denying the motion to suppress and also that the verdicts were against the weight of the evidence.  On October 8, 2004, the Superior Court issued a Memorandum affirming the judgment of sentence.  (SCR No. 45, Commonwealth v. Wilson, No. 2288 WDA 2003, slip op. (Pa.Super. Oct. 8, 2004)).

Petitioner, through Burt, filed a petition for allowance of appeal ("PAA") with the Supreme Court of Pennsylvania, which was denied on May 2, 2005.  (SCR No. 44).  He did not file a petition for writ of certiorari with the United States Supreme Court.  Accordingly, his judgment of sentence became final on the date the 90-day period to do so expired, which was on or around July 31, 2005.  See, e.g., Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a state prisoner's judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review).[4]

---

[2] In his statement to police, Petitioner apparently admitted, among many other things, that he took three rolls of coins and a Polaroid camera from Jones's apartment.  (See 10/10/03 Trial Tr. at 14, 41-50).

[3] Second-degree murder is defined as a criminal homicide committed while the defendant was engaged in the perpetration of a felony (in this case, a robbery). 18 PA.CONS.STAT. § 2502(b).  The jury was charged on first-degree, second-degree, and third-degree murder, and also on involuntary manslaughter.

[4] Respondents contend that Petitioner's request for federal habeas relief is untimely under the one-year statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.§ 2244(d).  They are wrong.  AEDPA requires, with a few exceptions not applicable here, that federal habeas petitions be filed

Next, on or around September 30, 2005, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. (SCR No. 46). He asserted a general claim of ineffective assistance of both trial (Brabender) and appellate (Burt) counsel. He contended that trial counsel was not prepared to represent him and gave him erroneous advice, and that he threatened him and failed to interview potential witnesses. Petitioner also claimed that joinder of the informations was in violation of due process and asserted once again that the trial court erred in denying the suppression motion.

The PCRA Court appointed William J. Hathaway, Esq., to represent Petitioner. Hathaway subsequently filed a "no merit" letter and a request to withdraw. (See attachment to SCR No. 48). On January 6, 2006, the PCRA Court issued a notice of intent to dismiss the petition without a hearing and an attached opinion setting forth the court's reasoning. (SCR No. 48). On February 2, 2006, the PCRA Court issued an order dismissing the petition. (SCR No. 49).

Petitioner's request for appointment of replacement counsel was denied. He filed a *pro se* appeal with the Superior Court. He raised, in relevant part, the following two claims:

1. "Whether trial counsel ineffectively failed to request a jury instruction explaining that Appellant could not be convicted of second degree murder unless, preceding the slaying, he possessed the intent to commit the alleged robbery/theft and both appellate and PCRA counsel ineffectively failed to raise, present and preserve this issue on direct appeal and in PCRA petition?"

2. "Whether the trial court improperly directed the jury's verdict of guilty and trial counsel was ineffective for failing to object and request a mistrial and both appellate and PCRA counsel's were ineffective for failing to raise, present and preserve this issue on direct appeal and in PCRA petition?"

*Brief For Appellant*, Commonwealth v. Wilson, No. 559 WDA 2006, 2006 WL 4528116 at *3 (Pa.Super. Sept. 21, 2006).

On February 6, 2007, the Superior Court issued a Memorandum affirming the denial of

---

within one year of the date the petitioner's judgment of sentence became final. In this case, Respondents erroneously calculate the limitations period as having commenced on May 2, 2005, which is the date the PAA was denied. In actuality, it commenced on or around July 31, 2005, the last date upon which Petitioner could file a petition for writ of certiorari. See, e.g., Swartz, 204 F.3d at 419.

3

PCRA relief.  (SCR No. 56, Commonwealth v. Wilson, No. 559 WDA 2006, slip op. (Pa.Super. Feb. 6, 2007)).  It denied Petitioner's ineffectiveness claims on the merits.[5]

Next, Petitioner filed with this Court a *pro se* Petition For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Document No. 1], which he subsequently amended [Document No. 18].[6]  In the Amended Petition, he raises the following three claims:

| | |
|---|---|
| Claim 1 | "Trial counsel was ineffective for failing to argue or request instruction that if the jury finds the defendant unable to form intent he could not be convicted of robbery or theft by unlawful taking." |
| Claim 2 | "Appellate counsel was ineffective for failing to raise trial counsel['s] ineffectiveness and for abandoning his client who is cognitively deficient and cannot litigate on his own." |
| Claim 3 | "The evidence was insufficient to sustain the jury's verdict of guilty beyond a reasonable doubt.  The jury found the defendant <u>could not</u> form intent, which is a requirement to sustain a conviction for first degree murder; But due to not knowing the defendant had to have intent to rob, and intent to steal to convict for robbery and theft by unlawful taking[,] the defendant was found guilty of those charges and consequently convicted of second degree murder.  Had the jury been instructed as to the intent requirements of robbery and theft by unlawful taking a different verdict would have resulted." |

[Document No. 18 ¶¶ 2-4 (emphasis in original)].

Respondents have filed their Answer [Document No. 19] and all relevant state court records.

---

[5] Petitioner also contended in his appeal to the Superior Court that the PCRA Court erred in denying his request to submit a *nunc pro tunc* concise statement of matters complained of on appeal pursuant to Appellate Rule 1925(b).  In disposing of this claim, the Superior Court explained that it would not hold Petitioner's failure to filed a 1925(b) Statement against him and that it would consider all of the claims Petitioner raised in his appellate brief.  (SCR No. 56, Wilson, 559 No. 2006, slip op. at 4-5).  Petitioner also asserted that the PCRA Court erred in permitting Hathaway to withdraw and in not appointing replacement counsel.  The Superior Court denied this claim and noted:  "[W]e have conducted our own review of the record and likewise find [as the PCRA Court had found] no arguable merit to any of the claims raised in [the] PCRA petition... On that basis we conclude the court did not err or abuse its discretion by denying PCRA relief and granting counsel leave to withdraw."  (Id. at 13).

[6] Petitioner raised a total of seven claims in his original habeas petition.  In his *Motion To Amend Petition For Writ Of Habeas Corpus*, he explained that he wanted to file an amended petition because the individual who assisted him in preparing the original petition "raised some frivolous issues and failed to raise and argue his meritorious issues."  [Document No. 15, ¶ 4].  For this reason, and also because an amended petition typically supercedes an original petition, the Court will consider only those claims raised in the Amended Petition.

**B.     Discussion**

   **1.     Claim 1 – Was Counsel Ineffective For Failing To Ensure The Jury Was Properly Instructed?**

Giving Petitioner the benefit of the doubt, the Court assumes that in Claim 1 he is advancing the same claim that he raised to the Superior Court in his PCRA appeal.[7] That is, that the trial court erred in failing to instruct the jury that in order to convict him of second-degree murder it had to find that *prior to killing Jones* he had formulated the intent to rob her,[8] and that trial counsel was ineffective for failing to object and ensure such an instruction was given. Petitioner argues that as a result of trial counsel's ineffectiveness, the jury may well have convicted him of second-degree murder even though the decision to rob was a spontaneous act which *followed* the slaying. (See SCR No. 56, Wilson, 559 WDA 2006, slip op. at 5-6 (citing *Appellant Brief*)). Since robbery was the predicate offense to his second-degree murder conviction, Petitioner contends that he is entitled to habeas relief on both his robbery and murder convictions (as well as his theft conviction).

Because the Superior Court rejected Claim 1 on the merits, AEDPA's standard of review (codified at 28 U.S.C. § 2254(d)) applies. It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v.

---

[7] Accordingly, the Court considers Claim 1 to be exhaust and not procedurally defaulted.

[8] In relevant part, under Pennsylvania law, "[a] person is guilty of robbery if, *in the course of committing a theft*, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens to commit any felony of the first or second degree; [or] (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury[.]" 18 PA.CONS.STAT. § 3701. (See also 10/10/03 Trial Tr. at 63). An element of theft is "the intent to deprive another person of ... property." (10/10/03 Trial Tr. at 68).

5

Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Claim 1 is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner must show that trial counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. He also must show that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the Strickland standard in rejecting Claim 1. (See SCR No. 56, Wilson, No. 559 WDA 2006, slip op. at 6 (citing, *inter alia*, Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (the legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal standard)). Its adjudication was neither "contrary to" nor an "unreasonable application" of Strickland.

As the Superior Court determined, the trial court properly instructed the jury. It explained that there could be no finding of guilt on the robbery count unless the jury found that Petitioner: (1) *committed a theft*; and, (2) *during the course of the theft* he inflicted serious bodily injury or intentionally put the victim in fear of such injury. The trial court then instructed the jury that in order to find that Petitioner committed a theft, it had to find that he unlawfully took property from the victim "*with the intent to deprive [her] of that property*." (10/10/03 Trial Tr. at 63-64, 67-68). Thus, contrary to Petitioner's assertion, the trial court did inform the jury that in order to convict Petitioner of robbery it had to find that he acted with the intent to deprive Jones of property.

The trial court also adequately conveyed to the jury that it was not sufficient that the Commonwealth merely prove that Petitioner formulated the intent to take Jones's property *after he had already killed her*. Rather, to convict Petitioner of second-degree murder, the jury had to be convinced beyond a reasonable doubt that he killed her while robbing her (and hence while

acting with the intent to take her property) or while fleeing after already having robbed her.  (Id. at 74-75 ("Second degree murder is oftentimes referred to as the felony murder rule.  And that's because the Commonwealth has to prove .... that Miss Jones is dead and that the defendant killed her or caused her death.  And, ... that the defendant did so *while committing or attempting or fleeing after committing a robbery*)).

      In sum, since the instructions given were not defective, there was no basis for trial counsel to object; nor was Petitioner prejudiced.  The Superior Court's rejection of Claim 1 may not be disturbed under AEDPA.

### 2.   Claim 2–Was Appellate Counsel Ineffective?

      In his next claim, Petitioner contends that appellate counsel (Burt) was ineffective for failing to raise trial counsel's ineffectiveness and for "abandoning" him.  Petitioner does not elaborate and it is unclear what specific claims Burt did not raise that Petitioner thinks he should have.  What is clear is that Burt did not abandon Petitioner.  He represented Petitioner on direct appeal before the Superior Court through completion of the PAA before the Pennsylvania Supreme Court.

      Petitioner contends generally that Burt should have raised claims of trial counsel's ineffectiveness on direct appeal, but under Pennsylvania law a defendant is to wait to raise such claims until *collateral* review.  Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002) (ineffectiveness of counsel claims are at their core collateral claims, and are best pursued through the avenue of post-conviction relief).  Therefore, Burt was not ineffective for failing to raise claims of trial counsel's ineffectiveness, as those were PCRA claims, not direct appeal claims.  Nor can Petitioner show that he was prejudiced by Burt's conduct, because during the PCRA proceeding the Superior Court considered on the merits all of the claims of ineffective assistance of trial counsel that Petitioner raised in his *pro se* brief.

      It may be that in Claim 2 Petitioner actually is advancing the argument that he is entitled to federal habeas relief because his PCRA counsel, Hathaway, was permitted to withdraw during the PCRA proceeding.  If Petitioner is indeed seeking habeas relief on such grounds, that claim

also fails. Ineffectiveness of PCRA counsel simply does not provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal constitutional right given that Petitioner had no such right to counsel at that stage in the proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted); see, e.g., Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D.Pa. 2002) ("the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not."). Nor can Petitioner succeed on any allegation that the state court erred in granting Hathaway leave to withdraw and in declining to appoint him counsel on his PCRA appeal:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.*

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added); see also Lambert, 387 F.3d at 247 ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

Finally, Petitioner had the opportunity to raise any claim of ineffectiveness of trial counsel to the Superior Court in his *pro se* PCRA appellate brief. Neither Burt nor Hathaway can be faulted for failing to raise a particular claim of trial counsel's ineffectiveness, because Petitioner could have raised any such claim himself. Petitioner contends that his mental infirmities make it impossible for him to represent himself, but his filings in state court and in this Court show that he is capable of proceeding *pro se* and raising claims on his own behalf.

### 3.   Claim 3–Was the Evidence Insufficient To Sustain the Verdict?

In his final claim, Petitioner contends that there was insufficient evidence to sustain the jury's verdict. This claim is premised, at least in part, upon the same contention that he makes in Claim 1, which is that the trial court failed to instruct the jury that it had to find that Petitioner

acted with the intent to take the victim's property in order to convict him of theft, robbery, and second-degree murder. Under Petitioner's logic, since the jury did not find that he acted with intent (because it was not instructed that it had to make that finding), its verdict was based upon insufficient evidence. This Court has already rejected Petitioner's faulty premise. The trial court adequately conveyed to the jury that it had to find that Petitioner acted with the intent to take property from Jones in order to convict him of the crimes at issue.

      It also appears that Petitioner believes that there was insufficient evidence to support the verdicts for robbery and theft because the jury acquitted him of first-degree (intent-to-kill) murder. In Petitioner's view, since the jury found him not guilty of intent-to-kill murder, he could not be convicted of any other crime of which intent was an element (or, in the case of second-degree murder, in which intent was an element of the underlying felony). Petitioner, however, misunderstands the nature of the jury's verdict and its possible acceptance of the voluntary intoxication/diminished capacity defense that he presented to the charge of first-degree murder. His defense to that charge was that his heavy drinking, combined with his cognitive disorder, made it impossible for him to have formulated *the intent to kill necessary to convict him of first-degree murder*. That the jury may have credited that defense does not mean that it found that he could not possess intent generally. Under Pennsylvania law, the voluntary intoxication/ diminished capacity defense is not a defense to any other criminal charge other than first-degree murder, nor may evidence of it be introduced to negate the element of intent for other offenses. 18 PA.CONS.STAT. § 308. And, importantly, the trial court specifically instructed the jury that the defense only applied to the charge of first-degree murder. (10/10/03 Trial Tr. at 78-81). Thus, if the jury did in fact accept his voluntary intoxication/diminished capacity defense, that acceptance was not relevant to any other crime for which he was charged.

      Claim 3 also fails because Petitioner failed to exhaust it and as a result it is procedurally defaulted.[9] On direct appeal, he claimed that the verdicts were against the weight of the

---

[9] The doctrine of "exhaustion" requires a state prisoner to first present his federal constitutional claims to the state

(continued...)

evidence. That is not the same as claiming that there was insufficient evidence to sustain the verdicts. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction). *Compare* Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]") *with* Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 321 (1979) ("it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim" and that "it follows that such a claim is cognizable in a federal habeas corpus proceeding."). Because Petitioner failed to properly exhaust Claim 3 to the state courts, he is precluded from receiving federal habeas relief on it. (See footnote 9).

### C.     Certificate of Appealability

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d

---

[9](...continued)
courts before raising those claims in federal habeas court. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002) (quoting Coleman, 501 U.S. at 731). In order to exhaust a claim properly, a petitioner must "fairly present" it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, ___ U.S. ___ ,130 S.Ct. 612 (2009)). When he has failed to do so, the claim is procedurally defaulted. See, e.g., Whitney v. Horn, 280 F.3d 240, 381 (3d Cir. 2002) (procedural default doctrine applies to bar federal habeas relief when a state court has declined or would decline to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement (*i.e.*, failed to exhaust the claim properly)).

299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Applying this standard here, jurists of reason would not find it debatable whether Petitioner's claims are without merit.  Accordingly, a certificate of appealability should be denied.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Amended Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to file timely objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  April 23, 2010

cc:     The Honorable Sean J. McLaughlin
        United States District Judge